977 So.2d 363 (2007)
Ingrid BELLEMERE, Appellant
v.
GEICO GENERAL INSURANCE COMPANY, Appellee.
No. 2005-CA-00472-COA.
Court of Appeals of Mississippi.
May 15, 2007.
Rehearing Denied November 27, 2007.
*364 Robert H. Tyler, Biloxi, attorney for appellant.
David Bruce Krause, Gulfport, Melanie M. Stewart, Edward C. Taylor, Gulfport, attorneys for appellee.
Before LEE, P.J., ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court.
¶ 1. Ingrid Bellemere was injured while traveling from Florida to Texas when the vehicle in which she was a passenger was struck from behind. While insurance coverage was eventually afforded to Bellemere, her claims were initially denied by GEICO. Subsequent to exhausting her coverage, Bellemere brought suit against GEICO and Betty Bowen, the tortfeasor. Bellemere alleged negligence against Bowen and requested contractual damages, in the form of an uninsured motorist claim, against GEICO as well as punitive damages. Following a settlement on the claim against Bowen, GEICO and Bellemere went to trial in the Circuit Court of Harrison County on the claims against GEICO. Subsequently, the trial court granted GEICO's motion for directed verdict as to Bellemere's punitive damages claims. The jury found for Bellemere on the remaining claim and awarded her $115,000. However this amount was reduced when the trial court granted GEICO's post-trial motion to amend the judgment. Aggrieved, Bellemere now appeals and raises the following issues:

*365 I. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUBMIT TO THE JURY INGRID BELLEMERE'S, APPELLANT, CLAIMS FOR COMMON LAW TORTIOUS BREACH OF CONTRACT AND/OR STATUTORY CLAIMS OF INSURANCE BAD FAITH, UNDER FLORIDA LAW.
II. WHETHER THE TRIAL COURT ERRED IN GRANTING GEICO GENERAL INSURANCE COMPANY'S, APPELLEE, MOTION TO AMEND THE JUDGMENT TO GIVE IT CREDIT FOR $50,000 RECEIVED BY BELLEMERE.
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 1993, Teddy Martin applied for and was issued an insurance policy under GEICO which covered a 1987 Cadillac. The policy contained $10,000.00 in personal injury protection coverage (PIP) and $10,000 for medical payments coverage. While the automobile was titled in both Martin's and Bellemere's name, the 1993 policy indicated that Martin was the sole owner. On February 12, 1997, Bellemere and Martin were traveling from Florida to Texas returning from a business trip. While stopped at the intersection of Highway 49 and 90 in Gulfport, Mississippi, Martin, who was driving at the time, and Bellemere, who was a passenger, were injured when Bowen, who was also insured by GEICO, struck the Cadillac from behind. Bellemere incurred some medical expenses for injuries suffered as a result of the accident and made a claim on Martin's policy for reimbursement and/or payment of her expenses. GEICO initially denied her claim in a letter dated June 6, 1997, explaining that PIP benefits did not extend to passengers who were non-resident relatives. Bellemere contested the decision in a letter dated September 17, 1997, and explained that she was an insured and co-owner of the vehicle. However, GEICO did not change its position and stated in a letter dated October 28, 1997, that it could not extend PIP benefits. Bellemere sent a second letter in response to GEICO's second denial and again explained that she was a named insured and co-owner of the vehicle. After reviewing Bellemere's second letter, Wanda Bell, a PIP examiner for GEICO, forwarded it to GECIO's legal department. Michael Gilliom, a claims attorney with GEICO, reexamined Bellemere's claims and afforded her full coverage. At trial, Gilliom testified that this was the first time in his experience in which two individuals who were not relatives and did not live together co-owned a vehicle that was insured by GEICO. Gilliom added that this same fact scenario had not occurred again since Bellemere's claim arose. He further explained that it was this unusual set of circumstances that delayed the decision to afford coverage.
¶ 3. Bellemere filed her complaint on February 4, 2000, alleging tortious breach of contract, emotional distress and gross negligence and requested contractual damages, in the form of an uninsured motorist claim, as well as punitive damages against GEICO. She also alleged negligence against Bowen. In April 2001, GEICO, on behalf of its insured, Bowen, settled with Bellemere in her suit against Bowen for the policy limits of $50,000. A trial concerning the remaining claims against GEICO began June 1, 2004, and, as the insurance contract between Martin and GEICO stated as such, the parties stipulated that Florida law was controlling. Following the completion of both parties' case-in-chief, the trial court granted GEICO's motion for directed verdict on the ground that Bellemere had failed to comply with a *366 Florida statutory provision regarding "first party" bad faith suits. The jury returned a verdict in Bellemere's favor with regard to the uninsured motorist claim and awarded $115,000. Subsequent to the jury's verdict, GEICO filed its motion to amend judgment claiming, in part, that pursuant to Fla. Stat. § 627.727(6)(c), GEICO was entitled to set off Bowen's $50,000 settlement against the $115,000 judgment. The trial court granted GEICO's motion to amend in regards to the $50,000 set off, and this appeal followed.
I. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUBMIT TO THE JURY INGRID BELLEMERE'S, APPELLANT, CLAIMS FOR COMMON LAW TORTIOUS BREACH OF CONTRACT AND/OR STATUTORY CLAIMS OF INSURANCE BAD FAITH, UNDER FLORIDA LAW.
¶ 4. Bellemere first argues that the lower court erred in granting GEICO's motion for directed verdict regarding her claim for tortious breach of contract. After vigorous argument from both parties, the lower court granted the motion based on its conclusion that Bellemere had failed to satisfy the requirements of Fla. Stat. § 624.155, to include notice, cure and the proof of bad faith in GEICO's general business practices. However, Bellemere argued that she did not allege a violation of section 624.155, but an independent tort worthy of punitive damages and not dependent on the provisions of section 624.155.
¶ 5. Our standard of review of a trial court's grant of a motion for directed verdict is clear.
This Court will consider the evidence in the light most favorable to the non-movant, giving that party . . . the benefit of all favorable inferences that may be reasonably drawn from the evidence. We must decide if the facts so considered point so overwhelmingly in favor of the movant that reasonable jurors could not have arrived at a contrary verdict. Thus, if reasonable jurors could not have arrived at a different verdict, the grant of a directed verdict must be affirmed on appeal. On the other hand if there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, we cannot affirm the grant of a directed verdict.
Forbes v. GMC, 935 So.2d 869(¶ 3) (Miss. 2006) (citing Cousar v. State, 855 So.2d 993(¶ 14) (Miss.2003)).
¶ 6. Section 624.155 allows an insured to bring a suit for bad faith against his insurer for failing to pay his claim provided certain provisions are met. Fla. Stat. § 624.155 (1999). Before the adoption of section 624.155, Florida courts refused to recognize a cause of action by an insured against his insurer alleging the insurer, in bad faith, refused to settle his claim; i.e., a "first party" bad faith cause of action. Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263, 265-67 (Fla.Dist.Ct.App. 1987). While "first party" bad faith claims were not permitted, if an insured could allege an independent tort, such as fraud or intentional infliction of emotional distress, he could proceed against the insurer on those claims and receive punitive damages. Greene v. Well Care HMO, Inc., 778 So.2d 1037, 1042 (Fla.Dist.Ct.App.2001); see also Griffith v. Shamrock Village, Inc., 94 So.2d 854, 858 (Fla.1957) (holding that while punitive damages are normally not recoverable for breach of contract, "where acts constituting a breach of contract also amount to a cause of action in tort there may be recovery of exemplary damages . . . however, the breach must be attended *367 by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort"). GEICO essentially argued during its motion for directed verdict that with the adoption of section 624.155 an insured's causes of action against his insurer were limited to those allowed by the statute. However, section 624.155(8) explicitly states that, "[t]he civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state." Fla. Stat. § 624.155(8). As such, the trial court erred in granting GEICO's motion for directed verdict as a result of any deficiency on Bellemere's part in regards to compliance with section 624.155. However, a directed verdict in GEICO's favor was proper on other grounds.
¶ 7. Bellemere alleged in her complaint that,
The conduct of Defendant GEICO rises to the level of a tortious breach of contract for which Plaintiff is entitled to punitive or exemplary damages in addition to actual damages suffered as a result of the breach of the insurance contract. Further, said Defendant has willfully and intentionally wronged the Plaintiff and has treated the Plaintiff with such gross and reckless negligence as to justify the imposition of punitive damages. . . .
Bellemere further alleged that, "[a]s a further proximate result of the wrongful conduct of the Defendant GEICO, the Plaintiff has suffered anxiety, worry, mental and emotional distress and other incidental damages. . . ." It seems clear that Bellemere, in requesting punitive damages, alleged gross negligence and emotional distress. In fact, in response to the concerns of the lower court in regards to the applicability of the civil remedy statute, Bellemere's counsel stated, "I did not plead a count of bad faith . . . our claim is that [GEICO] tortiously, by gross negligence, breached a contract of insurance . . . [a]nd I never alleged that [GEICO] didn't attempt in good faith to settle claims."
The grounds necessary to allow recovery of punitive damages under Florida's common law rules are that the conduct of the insurer against the interests of the insured must be so egregious as to constitute an independent tort. T.D.S. v. Shelby Mutual Insurance Co., 760 F.2d 1520 (11th Cir.1985). In general, dishonesty, misrepresentations, and fraudulent conduct must be alleged and established. See Butchikas v. Travelers Indemnity Co., 343 So.2d 816 (Fla.1976); Hartford Accident & Indemnity Co. v. Mathis, 511 So.2d 601 (Fla. 4th DCA), rev. denied, 518 So.2d 1275 (Fla.1987); Allstate Insurance Co. v. Douville, 510 So.2d 1200 (Fla. 2d DCA), rev. denied, 519 So.2d 986 (Fla.1987); Smith v. Standard Guaranty Insurance Co., 435 So.2d 848 (Fla. 2d DCA), rev. denied, 441 So.2d 633 (Fla.1983).
Dunn v. Nat'l Sec. Fire & Casualty Co., 631 So.2d 1103, 1108 (Fla. 5th DCA 1993). The Florida Supreme Court has routinely set the bar for punitive or exemplary damages high, and requires sufficient "evidence of a continued course of dishonestly or conduct of such a gross and flagrant nature showing wantonness and recklessness to the welfare of its insured . . ." in order to recover such damages. Hartford Acc. Indem. Co. v. Mathis, 511 So.2d 601, 602 (Fla. 4th DCA 1987). Additionally, an insured's conduct must "rise to the level of deliberate, overt and dishonest dealings. . . ." Smith v. Std. Guar. Ins. Co., 435 So.2d 848, 849 (Fla.Dist.Ct.App.1983), superseded on other grounds by statute, Fla. Stat. § 624.155. Finally, at least one Florida court has held that "even deliberate refusal to pay a legitimate claim will not *368 justify a punitive award." Indus. Fire & Casualty Ins. Co. v. Romer, 432 So.2d 66, 68 (Fla.Dist.Ct.App.1983), superseded on other grounds by statute, Fla. Stat. § 624.155.
¶ 8. The record shows that GEICO initially denied Bellemere both the medical payment coverage and PIP coverage as a result of her inaccurately perceived status as a non-owner and non-insured. Following the February 12, 1997 accident, Sonja Daugherty, a GEICO telephone adjuster, repeatedly attempted to contact Bellemere in order to determine whether she would be afforded coverage. Daugherty testified that while speaking with Bellemere on April 28, 1997, Bellemere informed her that she was a co-owner of the vehicle. After consulting with her supervisors, Daugherty informed Bellemere that she would not be extended PIP coverage as, pursuant to Florida statutory law, PIP benefits were not available to passengers who are not resident relatives. Daugherty testified that it was her opinion that the medical payments coverage should normally be paid regardless of the passenger's status; however, she could not recall why medical payments coverage was not immediately extended in Bellemere's case. At this point, Bellemere's case was handed over to Wanda Bell, a PIP examiner. She received the September 17, 1997, letter from Bellemere stating that she was an insured and co-owner of the vehicle. Bell discussed the matter with her supervisor and, in response, GEICO sent Bellemere a letter dated October 28, 1997 in which it explained that Florida law precluded PIP coverage for her, given that she was a passenger in a non-owned vehicle, not a named insured, not a resident relative, and the accident did not occur in Florida. After another letter from Bellemere in response to GEICO's October 28, 1997 letter, Bellemere's claim was forwarded to GEICO's legal department, and after its review of the circumstances surrounding Bellemere's claim, she was afforded full medical payment and PIP coverage.
¶ 9. While Gilliom, GEICO's claims attorney who made the final decision to afford coverage, admitted that GEICO may have made a mistake in initially denying Bellemere's claims, there was no testimony or other evidence indicating that GEICO's actions rose to the level required under Florida law to support punitive damages. Additionally, Gilliom's testimony explaining that the delay of coverage came as a result of the unique circumstances surrounding the claim, further supports the granting of the directed verdict. As such, after reviewing the record and applicable Florida law, we find that reasonable jurors could not have arrived at a contrary verdict on the issue of punitive damages and affirm the trial court's grant of GEICO's motion for directed verdict.
II. WHETHER THE TRIAL COURT ERRED IN GRANTING GEICO GENERAL INSURANCE COMPANY'S, APPELLEE, MOTION TO AMEND THE JUDGMENT TO GIVE IT CREDIT FOR $50,000 RECEIVED BY BELLEMERE.
¶ 10. Bellemere next claims that the trial court erred in allowing GEICO to offset the $50,000 paid on behalf of its insured, Bowen. While Bellemere concedes that under Florida law, an under-insured motorist carrier such as GEICO is entitled to a complete set off of any liability payments made by the under-insured tortfeasor, she argues that GEICO waived this right. Our standard of review regarding the granting of a motion to amend judgment is abuse of discretion. Howell v. State, 860 So.2d 704 (¶ 212) (Miss.2003).
¶ 11. The central issue on review is whether GEICO waived its right to setoff. *369 We find that it did not. Bellemere argues that in a letter dated September 2, 1999, GEICO expressed its intention to waive its right to offset. GEICO's letter stated, in pertinent part, "I did receive your letter dated August 24, 1999. Please be advised that we are willing to waive our subrogation interest against any Underinsured Motorist settlement that may be made at a later date." As stated in the letter, this was a response to Bellemere earlier correspondence. Her August 24, 1999 letter stated, in pertinent part, "[t]he purpose of this letter is to formally request permission to sue and/or settle the claim with Geico, where Bowen is the insured. Please provide me with said permission in writing as soon as possible so that I may proceed as necessary."
¶ 12. Subrogation is defined as, "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities." Black's Law Dictionary 1427 (6th ed.1990). As GEICO was not only Bellemere's insurer, but also Bowen's, it had the right to step into Bellemere's shoes once a settlement was reached in regards to her claims against Bowen, the tortfeasor, and recoup the amount extended. Reading GEICO's letter in isolation lends to two interpretations, each adopted by the respective parties in the case sub judice. The first is that GEICO waived its right to a subrogation claim against its insured, Bowen. The second is that GEICO waived its right to a statutorily granted set off of any liability payments made on behalf of the under-insured tortfeasor. Waiver has been defined by the Florida Supreme Court "as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." Raymond James Fin. Servs. v. Saldukas, 896 So.2d 707, 711 (Fla.2005). In consideration of Bellemere's August 24, 1999 letter, we cannot say that the trial court abused its discretion in finding that GEICO's letter in response did not waive its right to set off, but only its right to subrogation concerning Bowen.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART.