# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CA-00109-SCT

*MICHAEL ROBICHAUX, AS THE PERSONAL
REPRESENTATIVE OF MARY ROBICHAUX,
DECEASED, AND MICHAEL ROBICHAUX,
INDIVIDUALLY*

*v.*

*NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY AND JAY FLETCHER INSURANCE*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2009 |
| TRIAL JUDGE: | HON. BILLY G. BRIDGES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | BRANDON CURRIE JONES |
| | WILLIAM HARVEY BARTON |
| | DAVID WAYNE BARIA |
| | MARCIE FYKE BARIA |
| ATTORNEYS FOR APPELLEES: | H. MITCHELL COWAN |
| | JANET D. McMURTRAY |
| | DANIEL F. ATTRIDGE |
| | CHRISTOPHER LANDAU |
| | KENNETH S. CLARK |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART AND REMANDED - 12/15/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Following the destruction of their home in Hurricane Katrina, Michael and Mary

Robichaux filed suit on October 26, 2006, in the Circuit Court of Jackson County,

Mississippi, against their insurers, Nationwide Mutual Fire Insurance Company

("Nationwide") and their insurance agent, Jay Fletcher Insurance ("Fletcher Insurance"). The plaintiffs sought declaratory and injunctive relief, including indemnity under the insurance contract, compensatory and punitive damages, specific performance of the insurance contract, attorneys' fees, and court costs and expenses for what they alleged were uncompensated, covered losses under their homeowners' policy. Also included in the complaint were claims of fraud and bad faith by the insurer and its agent.

¶2.    The trial court ultimately granted summary judgment in favor of Nationwide and Fletcher Insurance based on the Robichauxes' failure to establish a genuine issue of material fact that the home was damaged by wind, which was covered by the subject policy, rather than its having been destroyed by flood, which the trial court found was excluded under the policy. Alternatively, the trial court found that the Robichauxes had failed to show they had suffered uncompensated losses due to their having received compensation under their flood policy. Aggrieved, the Robichauxes timely filed this appeal.

¶3.    This Court finds that the trial court erred in granting summary judgment on the issue of whether the Robichauxes suffered uncompensated, wind damage to structures other than their dwelling, and to personal property. Accordingly, we remand for further proceedings consistent with this opinion.

## Facts and Procedural History

¶4.     Mary and Michael Robichaux[1] owned a home at 1907 Washington Avenue, Pascagoula, Mississippi, located a few hundred feet from a canal and one block north of the Gulf of Mexico. The home was destroyed during Hurricane Katrina on or about August 29, 2005. At the time of the loss, the residential property was insured by Nationwide under a policy with the following coverage limits: $131,000 for dwelling, $13,100 for other structures, $97,405 for personal property, and $26,200 for loss of use. In addition to the homeowners' policy, the Robichauxes had purchased from Nationwide a hurricane rider entitled *Hurricane Coverage and Deductible Provision Endorsement* (hereinafter "*hurricane endorsement*"), which covered damage occurring as a result of a "windstorm during a hurricane." This coverage encompassed damage to the interior and to personal property inside the property "caused by rain, snow, hail, sand or dust if direct force of the windstorm first damages the building causing an opening through which the above enters and causes damage." The hurricane endorsement covered damage to the dwelling and other structures, as well as personal property.

¶5.     The Robichauxes reported the loss to Nationwide and made a claim under the policy.[2] After an initial investigation, which included a site visit by a claims adjuster, Nationwide

---

[1] Plaintiff Mary Robichaux died on May 8, 2010. A motion was filed with this Court on October 28, 2011, to substitute for Mary Robichaux her personal representative, Michael Robichaux. This Court granted that motion on November 14, 2011. ***Robichaux v. Nationwide Mut. Fire Ins. Co.,*** 2010-CA-00109-SCT (Order, November 14, 2011). Because both appellants participated in the trial court proceedings, for the purposes of this opinion, they are referred to collectively herein as the Robichauxes.

[2] To date, Nationwide has paid the Robichauxes $2,500 to cover living expenses incurred during its investigation of the claim and $500 for food loss.

sent a letter to the Robichauxes informing them that a question had arisen as to coverage, namely whether flood or surge damage had caused destruction of their real and/or personal property. Nationwide retained an engineer with HAAG Engineering to inspect the property, review photographs, and prepare a damage assessment report based on the investigation. This report, which included photographs of the remaining concrete slab foundation and neighboring properties, FEMA tidal surge data, and evidence showing the proximity of the property to the Gulf of Mexico, concluded that the Robichaux home and garage were destroyed by the hurricane's storm surge. On March 24, 2006, in reliance on the claims adjuster's report and the engineering investigation and reports, as well as the flood exclusion and anti-concurrent language in the subject policy, Nationwide denied the Robichauxes' claim based on a finding that the loss was caused by water or water-borne material as defined by the policy.

¶6.     Prior to this determination by Nationwide regarding the homeowners' policy, the Robichauxes had filed a claim under their flood insurance policy, a policy available through the National Flood Insurance Program. The flood policy paid $136,500 for flood damage to the dwelling and $70,400 for flood damage to the contents of the home, amounts which constituted the policy limits. Subsequently, as part of a newly instituted company policy regarding Katrina slab cases, Nationwide conducted a reassessment of all information pertaining to the Robichauxes' claims and tendered checks in the amount of $37,266.66 ($30,790.63 in potential dwelling damage and $6,476.03 in potential damage to other structures), which were returned uncashed by the couple eight months later.

4

¶7.     On October 26, 2006, the Robichauxes brought suit in the Circuit Court of Jackson County against Nationwide and its agent, Fletcher Insurance, in which the plaintiffs sought declaratory and injunctive relief, including damages under the insurance contract, compensatory and punitive damages, specific performance of the insurance contract, attorneys' fees, and court costs and expenses for what they alleged were uncompensated, covered losses under their homeowners' policy, as well as fraud on the part of their insurer and its agent. On November 27, 2006, Nationwide filed a Notice of Removal from the circuit court to the United States District Court for the Southern District of Mississippi.  The federal district court remanded the case to the Circuit Court of Jackson County on May 21, 2007, after which the Robichauxes filed a First Amended Complaint on September 29, 2008.

¶8.     Nationwide and Fletcher Insurance filed their Defenses and Answer on October 3, 2008. The Robichauxes designated William Mott, an engineering expert; Rocco Calaci, a meteorology expert; and Donald Dinsmore, an insurance expert.[3] Nationwide and Fletcher Insurance designated three engineering experts with HAAG Engineering Company, an additional engineering expert in the field of structural engineering, building inspection and

---

[3] The trial court found Donald Dinsmore's expert opinion on replacement costs failed to meet the standard for expert opinions under *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 516 U.S. 869, 116 S. Ct. 189, 133 L. Ed. 2d 126 (1995), and was irrelevant and inadmissible. The trial court refused to consider Dinsmore's opinion that the replacement costs of the property totaled $240,695.

5

mechanical engineering, an insurance expert, and two experts in meteorology and storm tide analysis.

¶9.     The Robichauxes filed a Motion for Partial Summary Judgment, and Nationwide and Fletcher Insurance filed a Motion for Summary Judgment. The motions were set for hearing before Special Circuit Court Judge Billy G. Bridges on September 2, 2009.  At the hearing, the trial court initially granted the Robichauxes' motion, but upon reconsideration withdrew judgment in favor of the plaintiffs and ruled in favor of Nationwide and Fletcher Insurance. The trial court issued its Findings of Fact, Conclusions of Law and Judgment denying the Robichauxes' Motion for Partial Summary Judgment and granting summary judgment in favor of Nationwide and Fletcher Insurance on October 5, 2009.  Aggrieved by the judgment in favor of the defendants, the Robichauxes filed this appeal.

**DISCUSSION**

¶10.    The interpretation of insurance policy language is a question of law. ***Lewis v. Allstate Ins. Co.***, 730 So. 2d 65, 68 (Miss. 1998). Questions of law are  reviewed *de novo*. ***Lowe v. Lowndes County Bldg. Inspection Dep't***, 760 So. 2d 711, 712 (Miss. 2000).

¶11.    Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied." ***Brown  v. Credit Center, Inc***.

6

444 So. 2d 358, 362 (Miss. 1983). This Court conducts a *de novo* review to determine whether the trial court properly granted a motion for summary judgment. ***Conrod v. Holder,*** 825 So. 2d 16, 18 (Miss. 2002) (citation omitted).

¶12.    For our review, the Robichauxes raise the following issues:

1.    Whether the "Hurricane Coverage and Deductible Provision" and the "Anti-Concurrent Causation Provision" or "Weather Conditions" Exclusion create an ambiguity that should be resolved in favor of the insureds.

2.    Whether in considering an "All Risk" homeowners' policy containing an ACC clause, the insurance company bears the burden of establishing causation for that part of the loss that is excluded.

3.    Whether the trial court erred in its interpretation of the ACC clause.

4.    Whether the insurance company's adjustment of the claims of its policyholders is relevant to that company's treatment of policyholders with like policies in the same geographical area.

5.    Whether the trial court erred in dismissing Plaintiffs' claims against Jay Fletcher Insurance.

We decline to address the appellants' issue four, given that it is not dispositive of the case and because, as the ultimate gatekeeper of admissibility of relevant evidence under Mississippi Rule of Evidence 401, the trial judge should determine its relevance. *See **Dep't of Human Servs. on Behalf of Adams v. Rains***, 626 So. 2d 136, 140 (Miss. 1993) ("The admission of relevant evidence is left largely to the discretion of the trial judge.") (citation omitted).

¶13.    Nationwide and Fletcher Insurance raise the issue of whether the Robichauxes are precluded as a matter of law from double recovery, given that they were compensated for

losses caused by flood damage to their dwelling and contents by their federal flood insurance policy.

> WHETHER THE HURRICANE ENDORSEMENT AND THE ANTI-CONCURRENT CAUSATION PROVISION IN THE SUBJECT POLICY WHEN READ TOGETHER CREATE AMBIGUITY.

¶14. The Robichauxes argue that the policy's anti-concurrent clause (ACC), when read in conjunction with the hurricane endorsement provision, creates an ambiguity that should be resolved in their favor. Nationwide and Fletcher Insurance contend that the trial court did not base its decision on the language contained in the ACC clause, but rather on the Robichauxes' failure to create a genuine issue of material fact that a covered cause or event, namely wind, caused damages that remained uncompensated, as they have received the full value of their property under their flood insurance policy.

¶15. Ambiguity exists in an insurance contract when the policy can be interpreted as having two or more reasonable meanings. *Mississippi Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1265 (Miss. 2002). When the words of an insurance policy are plain and unambiguous, the Court will afford them their plain, ordinary meaning and will apply them as written. *Lewis v. Allstate Ins. Co.,* 730 So. 2d 65, 68 (Miss. 1998). Where policy language is ambiguous and unclear, it must be resolved in favor of the insured. *Id.* "Further, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." *Id.* (citing *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994)).

¶16. The subject policy contains the following ACC or weather conditions exclusion, entitled *Property Exclusions*:

8

1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

   . . .

   b) Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne damage means:

   1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

   . . .

2. We do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

   . . .

   c) Weather conditions, if contributing in any way with an exclusion listed in paragraph 1 of this Section.

The hurricane endorsement reads, in pertinent part, as follows:

HURRICANE COVERAGE

Coverage under this policy includes loss or damage caused by the peril of windstorm during a hurricane. It includes damage to a building's interior or property inside a building, caused directly by rain, snow, hail, sand or dust if direct force of the windstorm first damages the building causing an opening through which the above enters and causes damage.

Hurricane coverage does not include loss caused by flooding, including but not limited to flooding resulting from high tides or storm surges.

Under this provision, windstorm is defined as "wind, wind gust, hail, rain, tornadoes or cyclones caused by or resulting from a hurricane."

¶17. The trial court found that "Plaintiffs' policy only covers damage caused exclusively by wind." Based on a reading of the plain language of the homeowners' policy, it is clear that flooding is excluded from the policy. Even in the hurricane endorsement, coverage does not extend to "loss caused by flooding, including but not limited to flooding resulting from

9

high tides or storm surges." Thus, there is no ambiguity in the policy that could be interpreted in favor of the Robichauxes. Accordingly, the Robichauxes' first point of error is without merit.

WHETHER THE TRIAL COURT ERRED IN INTERPRETING THE ANTI-CONCURRENT CAUSATION CLAUSE.

¶18. The trial court found that there was "no genuine dispute that the damage to Plaintiffs' home was caused by excluded flooding." The trial court based this conclusion on the Robichauxes' designated expert's opinion that the residence was destroyed by flooding, an opinion shared by the defendants' expert engineer who opined that the residence and other structures were destroyed by storm surge. However, the trial court erred in concluding that no genuine issue of material fact existed as to whether wind damaged the property prior to its destruction by storm surge. Whether Nationwide had a duty of indemnity under the policy for wind damage, if any, occurring prior to the storm surge presents a triable issue of fact. Summary judgment on this issue runs afoul of this Court's holding in *Corban v. United Services Automobile Association*, 20 So. 3d 601 (Miss. 2009).

¶19. In *Corban*, this Court interpreted an ACC clause with language identical to the subject policy. *Id.* at 612. In that case, this Court stated:

> The ACC clause applies only if and when covered and excluded perils contemporaneously converge, operating in conjunction, to cause damage resulting in loss to the insured property. If the insured property is separately damaged by a covered or excluded peril, the ACC clause is inapplicable. If damage is caused by a covered peril, the insured is entitled to indemnification for the covered loss, as the insured's right to recover for the loss has vested.

*Id.* at 616. The evidence in the present case shows that not all of the damage to the Robichaux residence was caused by the simultaneous convergence of wind and water;

10

accordingly, the ACC clause was inapplicable. In fact, Nationwide's own engineering expert noted wind damage to the roofs of two neighboring properties and opined that wind damage to the Robichaux home "would have been limited to cladding items such as roof shingles." Moreover, the Robichauxes' engineering expert opined that, prior to the storm surge, the property sustained wind damage to the roof before the structure was pushed down by the storm surge. Viewing the evidence in the light most favorable to the Robichauxes, there is evidence that wind damage occurred prior to the storm surge's destruction of the property.

¶20.    Alternatively, the trial court held that the Robichauxes had failed to establish that their losses were uncompensated, given that they had accepted proceeds under their flood policy. Thus, while a genuine issue of material fact may exist as to whether wind had damaged the dwelling, other structures, and personal property prior to the flood damage, this Court must determine whether the trial court was correct in finding that the Robichauxes failed to prove that their losses were uncompensated.

> WHETHER THE ROBICHAUXES WERE COMPENSATED FOR THE
> FULL VALUE OF THEIR PROPERTY AND THUS PRECLUDED FROM
> DOUBLE RECOVERY UNDER THE SUBJECT POLICY.

¶21.    Finally, Nationwide and Fletcher Insurance argue that the trial court properly concluded that the Robichauxes' acceptance of flood insurance proceeds under the flood insurance policy precluded them from further recovery under the homeowners' policy. The flood policy paid $136,500 for flood damage to the building and $70,400 for flood damage to the contents of the home (amounts which constituted the policy limits). Michael Robichaux testified that $136,500 in flood insurance proceeds for the property was far less than the value of his home, which he estimated to be $185,000.  This estimate was based on the sale of a

11

neighbor's property; however, the neighbor's testimony was that his property had sold for $165,000. In ascertaining a value for the dwelling, the trial court assessed the value of the Robichaux dwelling at $165,000 minus the value of the land, $53,860, which the trial court gleaned from tax records, for a total of $111,140. Thus, the court found that, even if the Robichauxes could have proven that wind had damaged their dwelling, they were precluded from collecting under Coverage A of the homeowners' policy because they had received the full value of their dwelling from proceeds paid under their flood policy.

¶22. In their reply brief, the Robichauxes continue to argue that, just as Michael Robichaux testified in his deposition, the property was worth $185,000. Generally, "[i]ndividuals may testify as to the value of their own property." *Regency Nissan, Inc. v. Jenkins*, 678 So. 2d 95, 101 (Miss. 1995). However, even if this Court accepts that value, $185,000 minus the land value of $53,860 is $131,140. As previously stated, the Robichauxes received $136,500 for the loss of their dwelling. Thus, even when viewing the evidence in the light most favorable to the Robichauxes, they still are precluded from again recovering for the loss of the dwelling, as they already have been compensated for the full value of their home. This Court has held "that '[t]here can be but one satisfaction of the amount due the plaintiff for his damages'. . . Thus, double recovery for the same harm is not permissible." *City of Jackson v. Estate of Stewart ex rel. Womack,* 908 So. 2d 703, 711 (Miss. 2005) (quoting *Medlin v. Hazlehurst Emergency Physicians*, 889 So. 2d 496, 500 (Miss. 2004)).

¶23. Because the trial court found the replacement cost opinion was based on estimated square footage costs provided the expert by the Robichauxes' counsel, the replacement cost estimate by Don Dinsmore in the amount of $240,695 was excluded by the trial court on the

basis that it was irrelevant, inadmissible, and failed to meet the requisite standards under ***Daubert v. Merrell Dow Pharmaceuticals, Inc***, 516 U.S. 869, 116 S. Ct. 189, 133 L. Ed. 2d 126 (1995). The Robichauxes argue in their reply brief that the trial court erred in excluding Dinsmore's opinion. Nationwide and Fletcher Insurance argue that, since the Robichauxes failed to raise this issue in their opening brief, they are procedurally barred from raising this argument in their reply brief. *See **Paw Paw Island Land Co., Inc. v. Issaquena and Warren Counties Land Co., LLC,*** 51 So. 3d 916, 928 (Miss. 2010) (citing ***Overstreet v. Allstate Ins. Co.***, 474 So. 2d 572, 577 (Miss. 1985) ("As it is improper to raise new arguments in a reply brief, the Court is under no obligation or duty to consider such argument.")). Moreover, the Robichauxes fail to cite any authority in support of their premise, and they do not address the trial court's finding that the expert's estimate was based on information obtained from the Robichauxes' counsel. Thus, this Court should not address this contention of error. *See **Smith v. Dorsey***, 599 So. 2d 529, 532 (Miss. 1992) ("The failure to cite any authority can be treated as a procedural bar, and this Court is under no obligation to consider the assignments.").

¶24. As to Coverage B under the homeowners' policy, "Other Structures," the trial court found that, since the Robichauxes had been compensated above and beyond the value of their dwelling by $23,360, the surplusage effectively served to compensate them for their other structures, which the trial court found to be valued at $5,000.[4] Along with a shed, there was evidence of a detached two-car garage in the back yard, which also was reduced to a slab.

---

[4]$5,000 was the amount paid by the couple in 1994 to construct a shed.

However, the record does not show that the payment of $136,500 for flood damage was intended to compensate for losses to other structures. In fact, the estimate prepared by the flood insurance adjuster was described as an "estimate to replace the dwelling," with no mention of other structures. Due to the policy limits' having been exceeded, the estimate did not include many of the replacement costs for "the exterior, interior, and ceilings along with the roof structure and detached garage." The adjuster's report stated: "Since this has not been included in our estimate should additional evidence come forth that indicates there may have been some wind damage it allows for payment in these areas." Accordingly, the trial court erred in barring recovery for Coverage B based on compensation received for the Robichaux dwelling. The question of whether wind damaged the other structures on the property prior to the flood damage, given that there is evidence that the Robichauxes remain uncompensated under Coverage B, presents a triable issue of fact. As such, this Court remands this issue to the trial court for a jury determination of whether wind damaged the other structures prior to their destruction by storm surge.

¶25. As to Coverage C, personal property, the Robichauxes received $70,400 for the contents of their home under the flood policy. The total amount of damages to personal property, however, was $186,144. As previously discussed, a genuine issue of material fact exists as to whether wind caused damage to the Robichauxes' property prior to its having been damaged by the storm surge. Since the Robichauxes have not been compensated for the full value of their personal property, we remand this case to the trial court for a jury trial on the issue of whether wind damaged the Robichauxes' personal property prior to the flood damage.

WHETHER THE INSURED HAD THE BURDEN OF PROOF IN

14

ESTABLISHING CAUSATION FOR THE PORTION OF THE LOSS THAT
IS EXCLUDED UNDER THE SUBJECT POLICY.

¶26.   As to Coverage A, Dwelling, and Coverage B, Other Structures, the policy states: "We cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section 1– Property Exclusions."  Thus, in drafting the policy, the parties created all-risk coverage for the dwelling and other structures. Conversely, Coverage C, Personal Property, provides coverage for nine enumerated causes of loss, including windstorm or hail, which makes this coverage a named perils, or specific perils, policy.[5]

¶27.   Nationwide concedes that, once the Robichauxes showed an accidental, direct, physical loss to the dwelling and other structures, Nationwide had the burden of proving that the damage was caused by an excluded peril, namely flooding. However, Nationwide contends that it met its burden of showing that the damage was caused entirely by an exclusion under the policy. The Robichauxes argue that the trial court, contrary to this Court's holding in *Corban*, 20 So. 3d at 619, erroneously assigned them the burden of proving that the cause of damages to their dwelling and other structures was wind. As recognized by this Court in *Corban*, 20 So. 3d at 618:

> Under [All-Risk] coverage, the insured has the initial burden to prove that the loss occurred. Thereafter, the burden shifts to the insurer, as [i]n an all-risk . . . policy where an exclusion is specifically pleaded as an affirmative defense the burden of proving such affirmative defense is upon the insurer . . . .

(internal citations omitted).

---

[5] "'Named perils' or 'specific perils' policies provide coverage only for the specific risks enumerated in the policy and exclude all other risks. 'All-Risk' policies provide coverage for all risks unless the specific risk is excluded." 7 Stephen Plitt, Daniel Maldonado, & Joshua D. Rogers, *Couch on Insurance* § 101:7 (3d ed. 2006).

¶28. Given that this case is to be remanded on the issue of whether wind was a proximate cause of damage prior to the destruction of the other structures and personal property by storm surge, we address the Robichauxes' argument only to reiterate that, upon remand, Nationwide has the burden of proving that the other structures under Coverage B were damaged by an excluded peril. The converse is true with regard to the Robichauxes' burden of proving that personal property under Coverage C suffered accidental, direct, physical loss as a result of one of the enumerated perils, namely windstorm.

### WHETHER PLAINTIFFS' CLAIMS AGAINST FLETCHER INSURANCE WERE IMPROPERLY DISMISSED.

¶29. The Robichauxes assert that "Fletcher Insurance represented to Plaintiffs that they had full and comprehensive insurance coverage under the subject policy and hurricane endorsement for any and all damage that is typically caused by a hurricane, including damage proximately and effectively caused by hurricane wind and damage caused from storm surge proximately caused by hurricanes." Moreover, the Robichauxes contend that they detrimentally relied on the misrepresentations of Fletcher Insurance by not increasing the amount of coverage under their flood policy based on Fletcher Insurance's representation that such an increase was not necessary with a hurricane endorsement in place under the subject policy. The trial court found that the Robichauxes failed to show they detrimentally relied on the representations of Fletcher Insurance because the couple maintained that at all times they had purchased as much flood coverage as they could afford.

¶30. As previously discussed, the policy at issue clearly excludes storm surge under the hurricane endorsement provision. Thus, the claim against Fletcher Insurance fails as a matter

16

of law, as "knowledge of an insurance policy is imputed to an insured regardless of whether the insured read the policy." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1161 (Miss. 2010) (quoting *Oaks v. Sellers*, 953 So. 2d 1077, 1083-84 (Miss. 2007)). This Court recognized in *Mladineo* that agents who offer advice to insureds regarding the sufficiency of their coverage have a duty to exercise reasonable care. *Mladineo,* 52 So. 3d at 1162. The plaintiffs in *Mladineo* were told by their agent that they were not in a flood plain and were advised not to procure flood insurance. *Id.* That was incorrect, as a portion of the plaintiffs' property was located in a flood plain and was damaged by storm surge. *Id.* at 1157. This Court recognized that the plaintiffs could not have known their property was located in a flood plain by reading their policy; thus, even though they were imputed with the knowledge of the policy's contents, an issue of material fact existed as to whether they detrimentally relied on their agent's misrepresentation regarding their lack of need of flood insurance. *Id.* at 1163-64. Ultimately, this Court found that summary judgment was improper on the plaintiffs' negligent misrepresentation claim against their insurance agent. *Id.* In doing so, this Court emphasized, "We are not carving out an exception to the duty to read. These alleged omissions and misrepresentations are not barred by the imputed knowledge of the policy because they are not misrepresentations that would have been disclosed by reading the policy." *Id.* at 1162-63 (citing *Ballard v. Commercial Bank of DeKalb*, 991 So. 2d 1201, 1207 (Miss. 2008) (internal quotations omitted).

¶31. The present case is distinguishable from *Mladineo* in that the Robichauxes could have ascertained that their hurricane policy and homeowners' policy did not cover flood damage, including damage caused by storm surge, by simply reading their policy. Plaintiffs concede

17

they have held a homeowners' policy with Nationwide for thirteen years. As previously discussed, this Court found the language of the policy to be unambiguous as to the exclusion of flood damage. "This Court has held as a matter of law that an insured is charged with the knowledge of the terms of the policy upon which he or she relies for protection." ***Id.*** (citing ***Atlas Roofing Mfg. Co., Inc. v. Robinson & Julienne, Inc***., 279 So. 2d 625, 629 (Miss. 1973)). The Robichauxes are imputed with the knowledge that their homeowners' policy and hurricane endorsement excluded flooding and storm surge. We affirm the trial court's grant of summary judgment in favor of Fletcher Insurance.

## CONCLUSION

¶32.    As genuine issues of material fact exist as to whether structures under Coverage B of the subject policy and personal property under Coverage C of the subject policy were damaged by wind prior to the destructive force of the storm surge, summary judgment was improperly granted in part. This Court hereby remands these issues to the trial court for a jury trial.

¶33.    However, summary judgment was properly granted to Fletcher Insurance, as the plaintiffs' claims against their agent fail as a matter of law, based on their imputed knowledge of the subject policy.  Accordingly, we affirm in part. Upon remand, Nationwide is the only remaining defendant.

¶34.    **AFFIRMED IN PART, REVERSED IN PART AND REMANDED**.

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR.**

18