GRIFFIS, P.J.,
for the Court:
¶ 1. Charter Oak Fire Insurance Company (“Charter Oak”) brought this subro-gation action against BJ Enterprises of Mississippi, LLC (“BJ”). Charter Oak sought to recover the amount it paid as a result of a fire loss that was covered by. its insurance policy. The jury returned a general verdict for BJ, and Charter Oak now appeals. We reverse and remand this case for further proceedings. •
FACTS
¶ 2. At the time of the fire loss, MCH Transportation Company (“MCH”) was the named insured on a policy issued by Charter Oak Fire Insurance Company, a subsidiary of Travelers Indemnity Company. The policy insured a commercial property and building located in Clinton, Mississippi.
¶3. TranSource Group, Inc. (“Tran-Source”), was the owner of record of the property. TranSource, like MCH, was solely owned by James Harrell. MCH managed the property.
¶4. In 2001, TranSource entered a lease-purchase agreement with Trans-Pro, Inc. (“Trans-Pro”). The agreement provided that TranSource would convey title of the property to Trans-Pro after an agreed-upon sum had been paid. Until such time, TranSource leased the property to Trans-Pro..
¶ 5. Jackson Truck and Trailer, Inc. (“Jackson Truck”) bought Trans-Pro and assumed the lease-purchase agreement. Jackson Truck was jointly owned by Harrell and R.J. Williams. Jackson Truck subleased a portion of the property to JFF Transportation Company (“JFF”). JFF’s stock was owned two-thirds by Harrell and one-third by John C. Minninger.
¶ 6. Approximately four months before the fire, JFF subleased a portion of its lease to BJ. Minninger and Edward R. (Bob) Cochran owned BJ.
¶7. Although there is some common ownership of the various entities involved, each named entity is a separate and distinct business entity. Harrell owed all or part of each entity except B J.
¶8. MCH, Jackson Truck, and JFF used the property in their trucking operations. Each company used wooden pallets. BJ made useable pallets out of broken pallets and sold pallets to MCH, Jackson Truck, and JFF.
*359 ¶ 9. On May 21, 2007, the building on the property was destroyed by fire. MCH made a claim on its insurance policy, and Charter Oak paid MCH the sum of $264,308.58 for the loss. The amount paid by Charter Oak did not fully cover MCH’s loss. As a result, Charter Oak and MCH entered a written agreement to jointly pursue recovery from any party(ies) responsible for the fire loss.
¶ 10. On March 17, 2008, Charter Oak and MCH filed a complaint in the Circuit Court of Hinds County, Mississippi, and it named JFF and BJ as defendants. The complaint asserted a claim for subrogation and alleged that BJ was vicariously liable for the negligence of its employees in starting the fire. The complaint asked for a monetary judgment in the amount of the loss incurred.
¶ 11. While this subrogation action was pending, on October 12, 2007, as the authorized representative of TranSource, Harrell signed a document titled “Assignment of Rights to MCH Transportation Company.” This document read:
On May 21,2007, the property bearing municipal address 1205 Industrial Drive, Clinton, Mississippi 39056 (hereinafter “the Property”) was owned by Tran-Source Group, Inc. (hereinafter “Tran-Source”). The Property was insured by The Charter Oak Fire Insurance Company (hereinafter “Charter Oak”) under a property insurance policy issued to MCH Transportation Company (hereinafter “MCH”). On May 21, 2007 the Property was damaged by fire (hereinafter “the Loss”). As a result of the Loss, Charter Oak paid MCH proceeds from the property insurance policy under claim number CFE7197.
In consideration of the fact that MCH maintained insurance covering the Property, and TranSource as owner of the Property received the benefit of Charter Oak’s payment for the Loss, TranSource hereby assigns to MCH all rights it had as owner of the Property as of May 21, 2007[,] to pursue any and all claims against any and all parties responsible for the Loss, whether based in contract, tort or warranty. This assignment of rights extends to any proceeds of settlement or judgment that may be recoverable from any party responsible for the Loss. TranSource represents and warrants that it has not assigned any rights to claims or the Loss to any person or legal entity other than Charter Oak to the extent of its payment.
TranSource agrees to provide all reasonable assistance to MCH in the pursuit of any claim against any responsible parties, including cooperation with production of documents and testimony relevant to proving this claim. In the event that any term[ ] or provision of this Assignment of Rights shall be held illegal, invalid, unenforceable or inoperative as a matter of law, the remaining terms and provisions of this contract shall not be affected thereby, but shall be valid and shall remain in full force and effect.
¶ 12. Approximately six months later, on April 1, 2008, Harrell and Williams signed a document titled “Statement and Declaration of Waiver of Rights by James Harrell and R.J. Williams, individually and for Jackson Truck and Trailer, MCH and TranSource Group” (the “Statement”). Harrell executed the Statement on his individual behalf and as the representative of TranSource and MCH. Williams executed the Statement on his individual behalf and as the representative of Jackson Truck. The Statement read:
The undersigned[,] James Harrell and R.J Williams, individually and on behalf of [Jackson Truck], MCH and Tran-Source Group[,] .... hereby waive any rights of recovery against JFF ... and *360 BJ ... to the extent that [Jackson Truck], MCH or TranSouree Group may have rights against them arising out of the fire that occurred on or about May 21, 2007.... This waiver is intended to be an exercise of rights under insurance policy ... by [Charter Oak].... This waiver is specifically intended to be an exercise of rights granted by the ... policy of [Charter Oak], specifically the rights contained in the section of the policy titled “Commercial Property Conditions” and in subparagraphs 2, b(l) and c of the paragraph thereunder titled “Transfer of Rights of Recovery Against Others to Us.” All potential claims and rights of recovery against JFF ... and B J ... are hereby being waived because the losses in question occurred on property with regard to which JFF ... and BJ ... were tenants. The undersigned James Harrell Further states in this regard that he is the sole owner of MCH and TranSouree Group and half owner of [Jackson Truck], along with R.J. Williams who owns the other half of the stock of [Jackson Truck], The undersigned James Harrell also owns 2/3 of the stock of JFF ..., and BJ ... is further a related entity being owned in part by John C. Minninger, co-owner of JFF[.]
[[Image here]]
Pursuant to those terms and because this loss occurred on property covered by the [Charter Oak] policy and because the party or parties that may be responsible for said fire are business firms in which I have an ownership interest and which are tenants of a business in which I have an ownership interest, these rights against these parties are waived by the undersigned individually and on behalf of the companies that they own and are authorized to act for.
The undersigned James Harrell and R.J. Williams do make these statements and declarations individually and as binding statements and declaration including the waivers for and on behalf of [Jackson Truck], MCH and TranSouree Group, having been duly authorized to do so by these companies.
¶ 18. Three days later, Harrell’s attorney sent Charter Oak a letter that gave notice of Harrell and his companies’ intent to waive their right not to pursue subrogation against JFF and B J. The letter read:
Our firm represents James A. Harrell and his companies, [MCH], [Tran-Source] and his interest in [Jackson Truck]. Please allow this letter to serve as notice that, James A. Harrell and his above referenced companies, pursuant to and in exercise of their rights under the Charter Oak Fire Insurance Company policy of insurance numbered 10660-5392H017, and contrary to any previously signed Assignment of Rights to [MCH], ... hereby exercise their right not to pursue subrogation against any tenants. James A. Harrell and the companies that we represent hereby waive their rights against other parties that may be responsible for damages due to a fire occurring on May 21, 2007[,] at a building covered by the aforementioned policy number IO660-5392H017. In particular, James A. Harrell and the companies we represent exercise such rights arising under the section of said policy entitled “COMMERCIAL PROPERTY CONDITIONS,” paragraph titled, “I, TRANSFER OR [sic] RIGHTS OF RECOVERY AGAINST OTHERS TO US,” subparagraphs number 2, b(l) and c. Pursuant to those terms and because this loss occurred on property covered by the aforementioned policy, and because the party or parties that may be responsible for said fire is a business firm in which James A. Harrell has an ownership interest and which are *361 tenants of a business in which James A. Harrell has an ownership interest, be it known to all that James A. Harrell and his companies, to the extent of his interests, hereby waive any rights against those parties being JFF Transportation, Inc.[,] and BJ Enterprises, LLC.
¶ 14. The trial began on May 23, 2011. That morning, the parties voluntarily dismissed MCH and JFF. Only Charter Oak and B.J. remained as the parties to the lawsuit.
¶ 15. Since the testimony as to how the fire occurred or was discovered is not essential to the outcome of this appeal, we have not detailed the evidence presented as it relates to the cause of the fire. The fire was discovered by BJ’s employees on May 21, 2007, and the exact location of the fire was disputed.
¶ 16. The jury returned a general verdict in favor of BJ. Thereafter, the trial court entered final judgment. Charter Oak filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the trial court denied. It is from this judgment that Charter Oak now appeals.
ANALYSIS
¶ 17. This appeal considers whether the Statement was sufficient to waive Charter Oak’s contractual right of subrogation. The trial court determined that this was a question for the jury to decide. As a result, the trial court gave Jury Instruction 20, which read: “The Court instructs the jury that if you find by a preponderance of the evidence that MCH waived Charter Oaks’ rights to sue the Defendant to recover money it paid under the policy, then your verdict must be for the Defendant.” There was no other jury instruction on waiver.
¶ 18. An insurer can waive its right to subrogation. A waiver is “the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right.” Bellemere v. Geico Gen. Ins. Co., 977 So.2d 363, 369 (¶ 12) (Miss.Ct.App.2007) (citations omitted). “Since the right of subrogation arises for the benefit of the insurer, it may waive its right to subrogation, either by contract or by conduct inconsistent with the right of subrogation, and the waiver may be either express or implied.” Couch on Insurance § 224:139 (3d ed. 2000). The party claiming the waiver of an important policy provision must prove it by clear and convincing evidence. N.H. Ins. Co. v. Smith, 357 So.2d 119, 121 (Miss.1978) (citing Mich. Millers Mut. Ins. Co. v. Lindsey, 285 So.2d 908, 911 (Miss.1973)).
¶ 19. Here, the question is whether Charter Oak’s insurance policy gave MCH, or the Harrell-owned companies, the contractual right to waive subrogation. The insurance policy contained a provision titled “Transfer of Rights of Recovery Against Others to Us.” In this provision, Charter Oak was granted the right of sub-rogation and gave the named insured the right to waive subrogation under certain circumstances. The provision read:
If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:
1. Prior to a loss to your Covered Property or Covered Income.
*362 2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:
a. Someone Insured by the insurance;
b. A business firm:
(1) Owned or controlled by you; or
(2) That owns or controls you; or
c. Your tenant.
This will not restrict your insurance.
¶ 20. “The interpretation of insurance policy language is a question of law. Questions of law are reviewed de novo.” Robichaux v. Nationwide Mut. Fire Ins. Co., 81 So.3d 1030, 1035 (¶ 10) (Miss.2011) (Citations omitted). “When the words of an insurance policy are plain and unambiguous, the Court will afford them their plain, ordinary meaning and will apply them as written.” Id. at 1036 (¶ 15) (citing Lewis v. Allstate Ins. Co., 730 So.2d 65, 68 (Miss.1998)).
¶21. The first two sentences of this provision are clear and unambiguous. This provision gives Charter. Oak the contractual right of subrogation. It also requires MCH, as the named insured, to cooperate and to support Charter Oak’s subrogation right. The third sentence of this provision gives MCH the contractual right to waive subrogation under certain circumstances. The Statement is clearly MCH’s attempt to waive subrogation against BJ under this third sentence. The determinative question is whether the Statement is sufficient to constitute a waiver.
¶ 22. The outcome of this case rests on the interpretation of this third sentence. The third sentence of this provision is also clear and unambiguous. There is no allegation or evidence presented that the written waiver was granted “[p]rior to a loss to your Covered Property.” Thus subpara-graph (1) is not applicable. Thus, we consider the following language:
But you may waive your rights against another party in writing: ...
2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:
a. Someone Insured by the insurance;
b. A business firm:
(1) Owned or controlled by you; or
(2) That owns or controls you; or
c. Your tenant.
¶ 23. “[Y]ou” must refer to MCH as the named insured. Thus, MCH may contractually waive its, and Charter Oak’s, rights against another party, but it (the waiver) must be “in writing.” “[T]hat party” must refer to B J. Thus, the Statement could be an effective contractual waiver if BJ “is one of the following.”
¶ 24. First, MCH’s waiver in the Statement would be effective if BJ was “(s]ome-one [i]nsured by the insurance.” BJ was not a named insured nor an additional insured under the policy. Thus, the waiver in the Statement could not be effective under 2(a).
¶ 25. Next, MCH’s waiver in the Statement would be effective if BJ was “[a] business firm (l)[o]wned or controlled by you; or (2)[t]hat owns or controls you.” BJ was a limited-liability company that was owned by its members, who were Min-ninger and Cochran. There was'no allegation or evidence presented that MCH owned or controlled BJ. Thus, the waiver in the Statement could not be effective under 2(b).
¶26. Finally, MCH’s waiver in the Statement would be effective only if BJ was MCH’s “tenant.”
*363 ¶27. BJ contends that Harrell stands in the center of all of the parties, owning all or some of each one except BJ. MCH, Jackson Truck, and JFF are all involved in trucking and use pallets. - Minninger and Cochran located the de-nailer needed to pull old broken pallets apart and the dumpster where unusable scraps could be burned. BJ was making pallets for these “sister” companies to use out of the broken pallets the “sister” companies provided in order to provide the “sister” companies a cheap source of pallets.
¶ 28. BJ argues that Minninger obtained the agreement of Harrell and Williams (and, therefore, MCH, Tran-Source, and Jackson Truck owned by them) for BJ to be a tenant and have use of the back shed area of the building for the pallet operation for the benefit of these related companies as well as JFF, which Minninger owned with Harrell. In fact, Minninger testified:
Q. At the time that JFF moved in as a tenant at the building at 1205 Industrial Boulevard in Clinton, was that as a result of conversations and agreement with Jim Harrell and RJ Williams and with their knowledge and understanding among you all?
A. Oh, yes, sir. Jim told me that it would, you know, ... help everybody. They had a vacant building there, and so they had a cost going on that they weren’t getting revenue for, and I needed a place to go, so Jim, you know — I really sat down with RJ, and RJ and I haggled out the rent, and I whined a lot and it got down....
Q. Okay. Now, I want to focus on the time when you started BJ along with Bob Cochran. Did you make Jim Harrell and RJ Williams aware of what you were doing did they agreed to it?
A. Yes, sir. I mean there was no problem, because they all knew I needed the pallets. They all knew what was going on. The space was there. In fact, when we arbitrated the rent, I said, well, if you’re going up to $8,500, you need to get a couple of your pieces [of] equipment back there, because I need that space for BJ, and so he moved that. He had like a backhoe and another piece of commercial equipment underneath the shed.
The only written lease on the property was the Lease Purchase Agreement between TranSource, the owner of the property, and Jackson Truck. All of the other agreements were verbal.
¶ 29. Thus, BJ’s claim of waiver is premised on Harrell. BJ contends that Harrell was clearly in control of all of these companies and the verbal lease agreements, as he had absolute ownership of MCH and TranSource, controlling ownership of JFF, and half ownership of Jackson Truck. To establish the waiver of an important policy provision, BJ must prove the waiver by clear and convincing evidence. N.H. Ins., 357 So.2d at 121.
¶ 30. There was simply no evidence to support the conclusion that BJ was the tenant of MCH. In fact, there was no evidence to indicate that there is a factual issue in dispute. The only testimony about the rental agreement is from Min-ninger. He testified that he negotiated the lease with Williams and JFF. Although Harrell was a part owner of JFF and was aware of the sublease by JFF, there is no evidence that MCH leased the property to B J.
¶ 31. Further, to find that BJ was the tenant of MCH or that there was a factual dispute to be decided as to that issue, this Court would have to disregard the corporate entities of MCH, TranSource, and *364 Jackson Truck. The evidence presented and authority cited do not support such. The Mississippi Supreme Court has previously refused to pierce the corporate veil of five entities that shared common ownership and engaged in related activities. Index Drilling Co. v. Williams, 242 Miss. 775, 785, 137 So.2d 525, 528 (1962).
¶ 32. Accordingly, we find that this provision of the insurance policy was clear and unambiguous. As such, we must interpret this provision as a matter of law, and our review is de novo. Robichaux, 81 So.3d at 1035 (¶ 10). Therefore, MCH did not have the contractual right to waive Charter Oak’s right of subrogation against BJ. The judgment of the trial court is reversed. We remand this case for further proceedings consistent with this opinion.
¶ 33. Because we find this issue to require reversal, we do not address the other issues presented.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR, J.